# CHARLESTON

LEWIS *v.* PRICHARD, *et al.*

Submitted February 22, 1905.   Decided April 11, 1905.

1.   COMMISSIONER IN CHANCERY—*Report—Exceptions—Rule on Appeal.*

.Where the circuit court sustains exceptions to a report of a commissioner stating an intricate account composed of many items, and re-states the account and enters a decree according to such re-statement, and upon an appeal from such decree this Court finds that both the statement of the account by the commissioner and the re-statement thereof by the lower court are materially erroneous as to many of the items thereof, this Court will announce the principles governing the statement of such account, reverse the decree of the lower court, sustain the exceptions to the report of the commissioner in so far as the report is in conflict with the principles announced by this Court, set aside the report and remand the cause to be further proceeded with, and with directions to re-commit the cause to a commissioner to re-state the account in accordance with the principles announced by this Court. (pp. 543 to 550.)

Appeal from Circuit Court, Cabell County.

Bill by R. A. Lewis against R. H. Prichard and others. Decree for plaintiff, and defendants appeal.

*Reversed.*

CAMPBELL, HOLT & DUNCAN, for appellants.

VINSON & THOMPSON and MCCOMAS & NORTHCOTT, for appellee.

COX, JUDGE:

This cause was before this Court on a former appeal. The decision on the former appeal is reported in 50 West Virginia, 239. The nature of the contract involved and a sufficient statement of the cause up to the time of that decision is contained in the opinion of the Court, and need not be repeated here. The contract involved provided that Lewis & Co. was to furnish to Crane & Co. certain timber and to drift it to the mouth of the Guyandotte river at the prices specified in such contract.

The firm of Lewis & Co. was composed of R. H. Prichard and R. A. Lewis. R. H. Prichard was also a member of the firm of Prichard & Brubaker and of the firm of Prichard & Co. These firms and Prichard, as an individual, were also engaged in furnishing timber to Crane & Co. Lewis was not interested in any of these dealings except the dealings of Lewis & Co. Crane & Co. was a corporation. By an arrangement between Lewis and Prichard, Prichard was to attend to the measuring of the timber of Lewis & Co. at the mouth of the Guyandotte and collect therefor. Lewis superintended the work of getting out the timber and drifting it to the mouth of Guyandotte. Instead of Prichard measuring the timber and collecting therefor in person, the firm of Prichard & Brubaker, for the most part, attended to those duties for the firm of Lewis & Co. with the acquiescence of, or at least, without dissent from, Lewis to that manner of conducting the business. Crane & Co. kept only one account for the transactions by it with all these firms and with R. H. Prichard, as an individual, and that account was kept in the name of R. H. Prichard. A statement from the books of Crane & Co. is filed with the testimony and will be referred to as the books of Crane & Co. No books were kept by Lewis of the business of Lewis & Co. The only books kept of the transactions of Lewis & Co. were those kept by Prichard & Brubaker, in which an account with Lewis & Co. appears. A statement from these books is filed with the testimony and will be referred to as the books of Prichard & Brubaker. The manner of keeping these books, or the failure to keep proper books, has led to much confusion and no small degree of uncertainty in the settlement of the accounts between

Lewis & Co. and Crane & Co. The contract between Lewis & Co. and Crane & Co. bears date the 22d day of August, 1895. There were previous contracts but they are not involved. The contract of August 22, 1895, in most of its material features, was construed by the former decision. After this cause was remanded it was again referred to a commissioner to state and settle the accounts between Lewis & Co. and Crane & Co. and the commissioner reported a balance in favor of Crane & Co. against Lewis & Co. of $2,061.85. The report of the commissioner was excepted to by Lewis and the creditors of Lewis & Co., and the court sustained, in most part, the exceptions and restated the account, and found an indebtedness in favor of Lewis & Co. against Crane & Co., of $33,587.85, and decreed the payment thereof by Crane & Co. to receivers appointed for the purpose. From this decree Crane & Co. appealed.

In considering the intricate questions arising in the settlement of this account upon the testimony and the mass of documentary evidence we are presented with no new questions of law. In order to determine the correctness of the decree of the lower court, and in order to determine what decree should have been entered by that court, it is necessary for us to pass upon the principles involved in the statement of the items of the account. In doing this we must keep in mind the former decision and the law casting the burden of proof as between the parties.

The first contention is in regard to the basis of charge against Crane & Co. Lewis & Co. claims that the nine thousand logs on the banks of Big Ugly Creek, mentioned in the opinion delivered upon the former appeal, should be charged for at the contract price of seven cents per cube, averaging the logs at thirty-three cubes each (less thirteen hundred of said logs not delivered) regardless of whether the seven thousand seven hundred logs were ever delivered at the mouth of Guyandotte or not. Crane & Co. contends that it is only liable to be charged with the logs actually delivered and remeasured at the mouth of Guyandotte. The dealings under the contract are at an end. Final settlement between the parties is all that remains. What is the true basis of charge against Crane & Co.? Under the opinion delivered by JUDGE BRANNON on the former appeal we are not left in

doubt.   We quote therefrom as follows:   "In January, 1897, there were delivered by R. A. Lewis & Co. on the banks of Big Ugly creek nine thousand logs, which were measured, accepted and branded with 'R. L.', which, by the contract, was to be regarded the brand of Crane & Co., and by the contract title in these logs thereupon vested in Crane & Co., and it became liable to account therefor to Lewis & Co., at seven cents per cubic foot.    No account of these logs was taken in the commissioner's account between Lewis & Co. and Crane & Co.;  no statement appears including these logs to the credit of Lewis & Co., and debit of Crane & Co. showing how much was debited to Crane & Co. on their account, and what payments were made thereon.   The commissioner was asked to report whether the seven cents per cube payable under the contract for timber delivered on the banks of Big Ugly creek had ever been paid, and he responded that it had not been paid 'in strict conformity with the terms of the contract;' but that he was of opinion that 'the advancements made from time to time by C. Crane & Co. was a substantial compliance with the terms of said contract.' * *  * An account should be taken of those logs at the price of seven cents per cubic foot.   Any advancements or payments made by Crane & Co. to the actual, separate use of the firm of Lewis & Co., should be credited to Crane & Co. The contract put upon Lewis & Co. the duty, not merely of putting logs on the banks of Big Ugly creek, but of rafting and drifting to the mouth of Guyan river.   If Lewis & Co. failed to drift any of these logs, they could claim nothing for logs not drifted neither the seven cents nor three and a half specified in the contract.   But Crane & Co. took upon themselves the duty of rafting and drifting, owing to the inability of Lewis & Co. to do so, and for such as Crane & Co. drifted at their expense, that company would be liable to pay Lewis & Co. only the seven cents per cube, but nothing for drifting.   For such as were drifted by the receiver and accepted by Crane & Co., Crane & Co. would be liable for both the seven and three and a half cents spoken of in the contract.   It must be remarked that the contract gives Crane & Company the right of re-measurement at the mouth of Guyan for the correction of the preliminary measurement made for the purpose of the advancement of seven cents

per cube on the banks of Big Ugly creek, and also gives right of sapping old logs and deduction for defec tive logs."

A further provision of the contract is as follows: "And the said R. A. Lewis and Company is to and hereby agrees to stand good for such deductions and for all loss of logs by sinking, by floods or otherwise, at the same price paid for same as hereinbefore set forth." It is clear that the title to the timber passed to Crane & Co. when delivered upon the banks of Big Ugly creek, but it is equally clear that Crane & Co. was only required to pay upon final settlement, for the timber which was actually delivered under the contract at the mouth of Guyandotte, according to re-measurement there made. The previous payments or advancements made upon first measurement on the banks of Big Ugly creek, if any, were to be reckoned with and the balance ascertained according to re-measurement at the mouth of the Guyandotte. The loss by sinking, floods or otherwise, as well as by deductions under the contract, was to be borne by Lewis & Co. This being true, the proper charge against Crane & Co. for timber under the contract is the amount of timber delivered at the mouth of the Guyandotte river according to the re-measurement made under the terms of the contract at the prices provided by the contract for delivering on the banks of Big Ugly creek, and for drifting to the mouth of the Guyandotte, less only, the price of drifting that part thereof drifted by Crane & Co. The whole amount of timber delivered and re-measured at the mouth of the Guyandotte consisted of three deliveries: one by Lewis & Co., one by Crane & Co. and one by the receiver, as shown by the evidence and as reported by the commissioner. These are the only deliveries with which Crane & Co. can be charged in the final settlement. An additional sum of one-half cent per cube on all the timber delivered and re-measured at the mouth of the Guyandotte should be charged against Crane & Co. by reason of the private understanding between it and Prichard, referred to in the former opinion, and which is not left open under that decision.

It is contended that because Crane & Co. took charge of the drifting of part of the timber upon the inability of Lewis & Co. to carry on that work, the part of the contract pro-

viding that Lewis & Co. should bear the loss of timber by
sinking, floods and otherwise was abrogated, and that there-
fore Crane & Co. became liable for such loss. There is no evi-
dence of negligence or fraud on the part of Crane & Co. as to
the timber which it took charge of for the purpose of drifting.
If Lewis & Co. were unable to drift the timber according to
contract then it was the duty of Crane & Co. to lessen the
injury caused by such failure, as much as could reasonably
be done. If in so doing it took charge of part of the
timber for the purpose of drifting it, (whether with, or with-
out, the consent of Lewis & Co. is immaterial) then in the
absence of any evidence of negligence or fraud it could not
be held liable for loss of timber by sinking, floods or other-
wise.

We will now consider the subject of credits to Crane &
Co., and in doing this, for convenience we will consider the
items of credit allowed and refused by the commissioner, as
these include, we believe, all items of credit claimed by
Crane & Co. First as to the items allowed: "By cash ac-
knowledged in contract—$3,000.00." This item is receipted
for in the contract of August 22, 1895, and should be al-
lowed. "By drifting, three and one-half cents per cube—
$1,442.70." This item is met by what we have said in rela-
tion to the charges against Crane & Co. The items, "By
rope, cash, etc.—$88.89;" "By cash to Strupe—$100;" "By
boomage—$317.68;" "By picking up logs—$670.75;" "By
boomage—$599.68;" "By picking up logs—$24.44;" "By
picking up logs—$47.50;" "By cash to Farley—$59.93;" we
think are fully established by the evidence and should be al-
lowed. Many of them are not seriously contested in the ar-
gument of counsel.

The item, "By 16 drafts and checks—$16,050.00," is se-
riously contested. One of these is in form a note, but we
shall refer to all of them as drafts and checks, following the
description of the commissioner. These sixteen drafts and
checks were drawn on Crane & Co., excepting two which
were drawn by Crane & Co. All were payable to Lewis &
Co. and endorsed by Lewis & Co. and paid by Crane & Co.
Two of them were drawn by R. A. Lewis & Co., one by
Prichard & Brubaker, and eleven by R. H. Prichard. Some
of these drafts and checks do not imply on their faces a credit

to Crane & Co. against Lewis & Co. by payment of them. But they may be explained by evidence *aliunde.* It is competent to show by extraneous evidence that these drafts and checks were drawn for the benefit of Lewis & Co. and that the payment thereof by Crane & Co. was for the benefit of Lewis & Co., and that Lewis & Co. received the actual benefit of such payment. Witness Smith, bookkeeper of Prichard & Brubaker, who kept the account between that firm and Lewis & Co. testifies that the endorsements of Lewis & Co. on these drafts and checks were not accommodation endorsements; and in effect further, that Lewis & Co. received the money on the several drafts drawn on Crane & Co., commencing in the month of August, 1895, and ending April, 1896, during which period these drafts and checks were drawn. He further testifies that the money received from these drafts was paid out, not later than a week from the time it was received. Witness Kohlsaat, bookkeeper for Crane & Co., testifies that Lewis & Co. received the benefit of these drafts and checks. There is no evidence to the contrary. This evidence taken with the facts and circumstances appearing, is sufficient to establish a credit to Crane & Co. against Lewis & Co. for these sixteen drafts and checks, and this item should be allowed.

The item, "By cash—$346," is made up of cash payments to R. H. Prichard by Crane & Co. excepting one dollar paid by Kohlsaat to Fry. Kohlsaat testifies that these payments were made to Prichard. Prichard is charged with them on the books of Crane & Co., but this witness can not say that these payments were made or applied to the use and benefit of Lewis & Co. Prichard's testimony is taken and he does not say that they were so made or applied, and we fail to find any testimony which shows, with any degree of certainty, that they were so made or applied. The one dollar to Fry does not appear to have been paid for the use of Lewis & Co., but to one of Lewis' men. Therefore this item should not be allowed.

The next item for consideration is, "By 28 drafts—$591.- 39." These drafts are filed by witness Smith, with his testimony as being omitted from his former statement. Twenty-six of these drafts were drawn by R. A. Lewis, one by R. A. Lewis & Co. and one by R. H. Prichard. All were drawn

on R. H. Prichard.   Smith testifies that they were paid by
Crane & Co. on the timber under the contract of August 22,
1895.   These drafts were drawn between the 24th of March
and the 22d of April, 1897.   They were drawn and accepted
about a year after the sixteen drafts and checks above men-
tioned were drawn.   Smith testifies, as we have stated, that
the money from the sixteen drafts and checks was paid out
not later than a week after it ' was received.   We find no
charges on the books of Crane & Co. corresponding in amount
to these twenty-eight drafts; but we do find charges larger in
amount about the dates of the acceptance of these drafts by
Prichard.   The testimony, taken with the books, is suffi-
cient to establish a credit for these twenty-eight drafts to
Crane & Co. and this item should be allowed.

The two remaining items allowed by the commissioner,
are "By note paid Patton-Milling Co.—$250," and "By note
paid Reed-Peebles—$1,112.44." These were payments on
notes made by Lewis & Co.   The first payment was on Feb-
ruary 13, 1896, and the second on March 2, 1896.   Accord-
ing to the evidence of witness Smith these payments were
made by Prichard and Brubaker with money furnished by
Crane & Co..   These payments appear on the books of Prich-
ard & Brubaker in the account with Lewis & Co.   The
books of Crane & Co. show no charges corresponding in
amount to these payments, but do show charges for a num-
ber of the sixteen drafts and checks above mentioned near
the date of these payments.   The funds derived from some
one or more of the sixteen drafts and checks above men-
tioned may have been used in making these payments.   We
can not say that these funds were not so used.   Smith
only says that these payments were made with funds fur-
nished by Crane & Co.   These two items are not sufficiently
established and should not be allowed.

We will now consider the items refused by the commis-
sioner.   The first item refused is the draft for two thousand
dollars of August 7, 1895, drawn by Lewis & Co. on Crane &
Co.   This draft is prior to the date of the contract of August
22, 1895. There were previous dealings between these parties.
The contract of August 22, 1895, acknowledged receipt of
three thousand dollars by Lewis & Co. from Crane & Co. and
this is the first item of credit above mentioned. There is some

testimony tending to show that the terms of the contract of August 22, 1895, were agreed upon some days before the contract was reduced to writing and signed. It does not appear that Crane & Co. is entitled to a credit for this two thousand dollar draft in addition to the three thousand dollars mentioned in the contract. The other items refused by the commissioner, in our judgment, were properly refused.

Interest on cash advancements should be allowed as provided by the contract until the timber delivered at the mouth of Guyandotte, at the contract prices, equaled the amount of the advancements. Upon the final settlement of the accounts between these parties and the ascertainment of the balance due either way, interest should be allowed on such balance from the cessation of the dealings under the contract, that is, from the delivery and re-measurement of the last timber delivered by the receiver. This seems to us equitable upon the question of interest.

In view of what we have said it is unnecessary for us to take up *seriatim*, the many exceptions to the commissioner's report. The statement of the account by the commissioner and the re-statement thereof by the court are materially erroneous and the decree must be reversed and the exceptions to the report sustained, in so far as the report is in conflict with the principles announced in this opinion, and the report set aside.

For the reasons stated the decree of the circuit court of Cabell county entered in this cause on the 9th day of January, 1904, is reversed and the exceptions to the report of the commissioner, Thomas R. Shepherd, are sustained in so far as said report is in conflict with the principles announced in this opinion, and said report is set aside and this cause is remanded to the circuit court of Cabell county to be further proceeded with and with directions to re-commit the cause to a commissioner to state and settle the account between Lewis & Co. and Crane & Co. according to the principles announced in this opinion.

*Reversed.*